David Andrew **KITTINGER**,
Plaintiff–Appellant,

v.

The **CITY OF COLORADO SPRINGS**,
Defendant–Appellee.

No. 92CA1332.

Colorado Court of Appeals,
Div. V.

July 1, 1993.

As Modified on Denial of Rehearing
July 29, 1993.

Certiorari Denied May 2, 1994.

---

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3), and § 24–51–1105, C.R.S. (1988 Repl.Vol. 10B).

Braden, Frindt, Stinar & Stimple, P.C., Daniel B. Stageman, Colorado Springs, for plaintiff-appellant.

James G. Colvin, II, City Atty., Kurt G. Stiegelmeier, Sr. Litigation Atty., Colorado Springs, for defendant-appellee.

Opinion by Judge DAVIDSON.

In this negligence action to recover damages for personal injuries, plaintiff, David Andrew Kittinger, appeals from the summary judgment entered in favor of defendant, the City of Colorado Springs, on the basis of sovereign immunity. We reverse and remand for further proceedings.

According to the amended complaint, in January 1991, plaintiff was injured in the Colorado Springs city auditorium while performing an inspection in the "fourth floor fan room." At the time he was injured, plaintiff was employed by Environmental Health Engineering, Inc. (EHE), which had been asked by the city to submit a bid for an asbestos removal project. Plaintiff alleged that suction from a large fan pulled his jacket toward the fan, and his jacket then became entangled in a large bolt which protruded from the fan, twirling very rapidly. And, plaintiff alleged that an agent or employee of the city had negligently modified the fan by substituting the protruding bolt for a set screw, which should have been flush with the fan.

The complaint also asserted that plaintiff's injuries were caused by the city's negligence and resulted from a dangerous condition of a

public building, for which sovereign immunity was waived pursuant to § 24–10–106(1)(c), C.R.S. (1988 Repl.Vol. 10A).

The city filed an answer which admitted that the twirling bolt pulled plaintiff and his jacket toward the fan but denied that either the fan or the bolt caused plaintiff's injuries. Among other defenses, the city asserted that plaintiff's claims were barred by sovereign immunity.

The city also filed a motion for summary judgment, asserting that the condition of the fan room, fan, and bolt did not constitute a dangerous condition of a public building within the meaning of § 24–10–103(1), C.R.S. (1988 Repl.Vol. 10A) and § 24–10–106(1)(c). Attached to the motion were exhibits purporting to show that the fourth floor fan room was kept locked and was not accessible to the public without authorization from a city employee and that the machinery and fans in the fan room were not a danger to anyone outside of the fan room. As an alternative ground, the city asserted that it was plaintiff's statutory employer and that, therefore, suit was barred under the workers' compensation act.

Plaintiff filed a cross-motion for summary judgment, with supporting documents, which asserted that his claims fell squarely within an exception to sovereign immunity, namely, the dangerous condition of a public building. Plaintiff also denied that the complaint was precluded by the workers' compensation act.

After reviewing the parties' submissions, the trial court concluded that the city was immune from plaintiff's claims as a matter of law on the grounds that plaintiff was not "clearly" a member of the "public," as that term is used in the statutory definition of a dangerous condition of a public building. Plaintiff appeals from that ruling.

## I.

■ Preliminarily, we note that, under the procedures set forth in the Governmental Immunity Act, as applicable here, when a public entity claims before trial that it is immune under the Act, that issue is to be determined by the court. *Compare* § 24–10–108, C.R.S. (1988 Repl.Vol. 10A) *with* § 24–10–108, C.R.S. (1992 Cum.Supp.) (effective July 1, 1992). Generally, such issue is a question of subject matter jurisdiction to be decided pursuant to C.R.C.P. 12(b)(1). *See Trinity Broadcasting of Denver, Inc. v. The City of Westminster,* 848 P.2d 916 (Colo. 1993).

■ Here, the trial court granted summary judgment on the narrow ground that plaintiff was not "clearly" a member of the "public," as that term is used in § 24–10–103(1) of the Governmental Immunity Act. Although the proper procedure for determination of the city's contentions that suit is barred under the Governmental Immunity Act is under C.R.C.P. 12(b)(1), not C.R.C.P. 56, nonetheless, on the record before us we can address plaintiff's challenge to the trial court's ruling to the extent that the trial court reasoned that dismissal was appropriate because the term "public" must be strictly construed under § 24–10–103(1). *See Trinity Broadcasting of Denver, Inc. v. City of Westminster, supra* (if reviewing court is satisfied that all relevant evidence has been presented to the trial court, it may apply C.R.C.P. 12(b)(1) to the record without remand). However, because we conclude that that determination was incorrect, and because the alternative grounds argued by the city for affirmance cannot be determined here as a matter of law, either under C.R.C.P. 12(b)(1) or C.R.C.P. 56, we reverse and remand to the trial court with directions.

## II.

Addressing the merits of plaintiff's primary contention, we agree that the trial court erred in concluding as a matter of law that he was not a member of "the public," as that term is used in the statutory definition of "dangerous condition."

The trial court based its ruling upon a strict construction of the statutory waiver of immunity for "a dangerous condition of any public building" set out in § 24–10–106(1)(c). The statutory definition of "dangerous condition" provides:

. 'Dangerous condition' means a physical condition of a facility or the use thereof which constitutes an unreasonable risk to

the health or safety *of the public*, which is known to exist or which in the exercise of reasonable care should have been known to exist and which condition is proximately caused by the negligent act or omission of the public entity in constructing or maintaining such facility.

Section 24–10–103(1) (emphasis supplied).

■ A statute must be read and considered as a whole to ascertain the General Assembly's intent in enacting it; every word of a statute must be given effect, to the extent possible, consistent with that legislative intent. *Mentzel v. Judicial Department*, 778 P.2d 323 (Colo.App.1989). In *Mentzel*, this court held that the intent of the waiver of sovereign immunity for a "dangerous condition of any public building" was "to encourage public entities to construct, maintain, and use their buildings and facilities in a manner that will assure the safety of *persons* who visit them." *Mentzel v. Judicial Department, supra*, at 325 (emphasis supplied).

Here, however, relying on *Bloomer v. Board of County Commissioners*, 799 P.2d 942 (Colo.1990), the trial court determined that it was required to interpret the "dangerous condition" exception strictly. Applying this rationale, it then concluded that plaintiff was not a member of the "public" because he was a business invitee to an area of limited access and that, therefore, the city's immunity had not been waived. Plaintiff contends that this was error, and we agree.

■ In 1971, declaring that its previous recognition of sovereign immunity had been a mistake, our supreme court abolished the doctrine of sovereign immunity. *Evans v. Board of County Commissioners*, 174 Colo. 97, 482 P.2d 968 (1971). The Governmental Immunity Act was enacted in that same year to reestablish the doctrine. *See* § 24–10–101, et seq., C.R.S. (1988 Repl.Vol. 10A). In interpreting the Act, the supreme court thereafter held that the immunity created by the Act, being in derogation of common law—as it existed in 1971—must be strictly construed. *Stephen v. City & County of Denver*, 659 P.2d 666 (Colo.1983) (fn. 3). Accordingly, plaintiff argues, since the grant of immunity to public entities must be strictly construed, the waiver of that immunity, such

as that set forth in § 24–10–106(1)(c) and § 24–10–103(1), may not be so construed. We agree.

We are aware that in *Bloomer v. Board of County Commissioners, supra*, the supreme court stated that an exception to immunity, in that case the dangerous condition of a public highway, must be strictly construed. *See Jenks v. Sullivan*, 826 P.2d 825 (Colo. 1992). However, the court had previously held, and has recently reiterated, that it is the *immunity* created by the Governmental Immunity Act—and thus by ineluctable implication not the exceptions to immunity— that must be strictly construed. *State of Colorado v. Moldovan*, 842 P.2d 220 (Colo. 1992). *Cf. City of Aspen v. Meserole*, 803 P.2d 950 (Colo.1990); *Stephen v. City & County of Denver, supra*. In *Moldovan*, the court also held that strict construction of the scope of sovereign immunity is consistent with the remedial purpose of the Act.

■ Accordingly, we conclude that the trial court erred in strictly construing the term "public" to exclude a business invitee such as plaintiff for purposes of the "dangerous condition" waiver of immunity. As noted in *Bennetts, Inc. v. Carpenter*, 111 Colo. 63, 137 P.2d 780 (1943), the word "public" must be interpreted in each case according to use and statutory intent. Thus, in that case, a cafeteria at a guarded munitions plant in an area where admission was highly restricted was held to be a place in which meals were regularly served to "the public."

■ Here, one of the purposes of the Governmental Immunity Act is "to permit *a person* to seek redress for personal injuries caused by a public entity." *State of Colorado v. Moldovan, supra*, at 222 (emphasis supplied). Accordingly, we cannot construe the term "public" in the "dangerous condition" definition to exclude a person in a public building at the city's invitation.

■ We therefore hold that the trial court erred in concluding, on this basis, that the city was entitled to sovereign immunity as a matter of law. *See* § 24–10–106(1)(c).

### III.

Alternatively, the city argues that, even if the trial court erred in dismissing the complaint on the specific ground that plaintiff was not clearly a member of the public, the complaint was barred in any event because (1) the fan room in which plaintiff was injured was not open to the public and, therefore, that part of the city auditorium was not a "public building" as set forth in § 24–10–106(1)(c), and (2) the city was plaintiff's statutory employer and therefore the complaint was barred under the workers' compensation act.

Insofar as the city argues that the fan room was locked, inaccessible to the public, not intended for public use, and therefore did not constitute a public building, these are legal and factual issues which have not been addressed by the trial court. Thus, because the trial court used an incorrect legal standard in its interpretation of the Governmental Immunity Act and because we are not satisfied from the limited record before us that all relevant evidence has been presented by the parties, without comment on the merits or lack thereof, we remand these issues to the trial court for determination. *See Trinity Broadcasting of Denver, Inc. v. City of Westminster, supra;* C.R.C.P. 12(b)(1).

Similarly, neither can we determine the city's contention that the plaintiff's complaint was barred under the workers' compensation act.

Specifically, the city contends that plaintiff's complaint was barred under the workers' compensation act because the city was plaintiff's "statutory employer." In support of this contention, the city argues that, when plaintiff was injured, EHE was performing services for the city pursuant to a written contract. Plaintiff has argued, however, that the purpose of his inspection was only to enable EHE to decide whether to submit a bid and was not governed by any contract with the city.

We conclude, based upon the limited record before us, that our determination of this issue as a matter of law would be inappropriate and that disputed and unresolved factual questions precluded summary judgment on this issue. *See Dominguez Reservoir Corp. v. Feil,* 854 P.2d 791 (Colo.1993); C.R.C.P. 56(c).

Based upon our resolution of these issues, it is unnecessary to address the parties' other arguments.

The judgment is reversed, and the cause is remanded to the trial court for further proceedings, including an evidentiary hearing, if necessary, consistent with the views expressed in this opinion.

HUME and TAUBMAN, JJ., concur.